**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KEVIN WINKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-2171 (RBW) |
| | ) | |
| ANTHONY CAMPANALE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Kevin Winkey brings this action against the District of Columbia (the "District") and two police officers of the District's Metropolitan Police Department, Anthony Campanale and Andre Parker (the "officers"), asserting various constitutional and common law claims arising out of his arrest in March 2008. See Complaint ("Compl.") ¶¶ 10-58. Currently before the Court is the defendants' motion for partial summary judgment. Also before the Court is the plaintiff's motion to accept his late-filed opposition to the defendants' motion for partial summary judgment. Upon careful consideration of the parties' submissions,[1] the Court will deny the plaintiff's motion and grant the defendants' motion.

### I. The Plaintiff's Motion to Accept His Untimely Opposition Brief

By way of background, the defendants previously moved for involuntary dismissal of this case pursuant to Federal Rule of Civil Procedure 41(b), based in part on the multiple failures by

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: the Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgment ("Defs.' Mem."); the defendants' Statement of Facts ("Defs.' Facts"); the Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment ("Pl.'s Opp'n"); the Motion to Accept Plaintiff's Late Filed Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mot."); and the Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Accept Plaintiff's Late Filed Opposition to Defendants' Motion for Summary Judgment ("Defs.' Opp'n").

plaintiff's counsel, Anitha W. Johnson, to comply with this Court's orders.  See ECF No. 53 at 1.  The Court held a hearing on the defendants' motion on October 2, 2012.  While acknowledging Ms. Johnson's noncompliant behavior, the Court ultimately declined to dismiss the case pursuant to Rule 41(b).  See October 2, 2012 Minute Order.  Recognizing the potential for future noncompliance with orders of this Court, however, the Court denied the defendant's motion without prejudice, and provided the following admonition: "Plaintiff's counsel is advised that any further misconduct in this case will result in the Court reinstating the defendants' motion and dismissing this action."  Id. (emphasis added).  The Court also entered a summary judgment briefing schedule, directing the plaintiff to file "his memorandum in opposition to the defendants' motion on or before January 11, 2013."  Id.  Ms. Johnson, however, filed the plaintiff's opposition brief on January 15, 2013, four days past the deadline set by the Court.  Ms. Johnson then filed the instant motion a week later, on January 22, 2013, asking the Court to accept the untimely opposition brief.

The plaintiff's motion must be denied for several reasons.  First, under the Court's General Order and Guidelines for Civil Cases, motions for extensions of time "must be filed at least four (4) business days prior to the deadline the motion is seeking to extend."  ECF No. 8 at 5.  The plaintiff's motion, filed more than a week after the deadline he seeks to extend, ignores this directive.  Second, the motion disregards the admonition issued in the Court's March 29, 2012 Order that it "will grant no further extensions [of time] . . . for any reason, absent truly exigent circumstances."  ECF No. 44 at 3.  In what appears to be a recurring practice in this case by plaintiff's counsel, Ms. Johnson fails even to acknowledge this Order in her motion.  Nor does the motion present any "exigent circumstances" justifying an extension.  Rather, it represents that Ms. Johnson attempted to timely file the opposition brief by January 11, 2013, but

her password for the Court's electronic case filing system "did not work," and her paralegal "promptly filed" the brief upon obtaining a new password. Pl.'s Mot. at 2-3. This unsubstantiated claim strikes the Court as "nothing but an updated version of the classic 'my dog ate my homework' line," which is "plainly unacceptable." Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004). Indeed, "[i]mperfect technology may make a better scapegoat than the family dog in today's world, but not so here." Id. The Court therefore cannot accept the plaintiff's untimely opposition brief, and will strike it from the docket.[2]

But merely denying the plaintiff's motion is not sufficient, for this is not the first time that Ms. Johnson has disregarded this Court's orders. Most relevant here, a month after the Court entered its March 29, 2012 Order prohibiting extensions of time absent exigent circumstances, Ms. Johnson filed what the Court would characterize as a routine motion for an extension of time, making no attempt to show exigent circumstances. See ECF No. 46. The Court accordingly denied the motion and added the following warning: "because plaintiff's counsel appears to have utterly disregarded the . . . admonition in the Court's March 29, 2012 Order, she is advised that sanctions will be imposed for any future non-compliance with this Court's Orders." April 26, 2012 Minute Order. Furthermore, as noted, the Court's October 2, 2012 Minute Order advised Ms. Johnson that "any further misconduct in this case will result in the Court reinstating the defendants' motion [for involuntary dismissal under Rule 41(b)] and dismissing this action."

---

[2] Even if the Court did accept the plaintiff's untimely opposition brief, it would not help him defeat summary judgment. This is because the plaintiff failed to submit with his brief the statement of disputed facts required by Local Civil Rule 7(h)(1). Nor does his brief contain citations to the record or any evidence that could create a genuine factual issue. Consequently, the Court would have deemed the defendants' statement of facts admitted by the plaintiff. See Fed. R. Civ. P. 56(e)(2); Local Civ. R. 7(h)(1).

The defendants ask the Court to dismiss this case in light of Ms. Johnson's most recent transgressions—her late filing of the opposition brief and improper motion for extension of time. Defs.' Opp'n at 4. Although the Court is tempted to do so, the District of Columbia Circuit has set a high bar for involuntary dismissal based solely on attorney misconduct. See Gardner v. United States, 211 F.3d 1305, 1309 (D.C. Cir. 2000). This is particularly true where, as here, the underlying rationale for dismissal would be deterrence of future misconduct by counsel and there is no indication that the client is at fault. See Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1077-79 (D.C. Cir. 1986). As the Shea court explained, "[w]hen the client's only fault is his poor choice of counsel, dismissal of the action has been deemed a disproportionate sanction. Rather, we have frequently said, the District Court should first attempt to sanction the attorney at fault." Id. at 1077. In any event, as a prerequisite to dismissal based on attorney misconduct, a court must provide notice of the misconduct directly to the client. See id. at 1078 ("We look disfavorably upon dismissals as sanctions for attorney misconduct or delay unless the client himself has been made aware of the problem, usually through notice from the trial court. We advise strongly the district courts themselves directly notify the client when attorney misconduct has occurred to a degree that the court is contemplating dismissal if a recurrence occurs."). The Court has not yet provided the requisite notice in this case.

Accordingly, heeding the Circuit's guidance in Shea, the Court will direct Ms. Johnson to pay the Clerk of Court $500 as a sanction for her violations of this Court's orders, as described above and at the hearing held by the Court on October 2, 2012. The Court will also require Ms. Johnson to reimburse the defendants for costs they reasonably incurred in preparing their opposition to the plaintiff's motion to accept the untimely opposition brief. Finally, in an abundance of caution, the Court will directly provide the plaintiff with a separate notice

consistent with the dictates of Shea. Id. ("Th[e] communication should notify the client, in clear and unequivocal terms, that his case is in danger of dismissal due to his lawyer's dereliction; that the court will no longer tolerate the attorney's current course of conduct; and that the client is advised to be in touch with his lawyer to ensure future compliance with court orders, or to make arrangements for new counsel.").

## II. The Defendants' Motion for Partial Summary Judgment

While the conduct of plaintiff's counsel has not yet warranted dismissal of this case under Rule 41(b), her failure to file a timely opposition brief does justify treating the defendants' motion for partial summary judgment as unopposed, pursuant to Local Civil Rule 7(b) (If a memorandum in opposition to a motion "is not filed within the prescribed time, the Court may treat the motion as conceded."). But "'even where a summary judgment motion is unopposed, it is only properly granted when the movant has met its burden.'" Cromartie v. Dist. of Columbia, 479 F. App'x 355, 356 (D.C. Cir. 2012) (quoting Alexander v. FBI, 691 F. Supp. 2d 182, 193 (D.D.C. 2010)). Thus, the Court's remaining task "is to determine whether summary judgment [is] appropriate on the facts as stated in the [defendants'] motion," which the Court accepts "as having been conceded by [the plaintiff] due to his failure to respond." Id. (citing Local Civ. R. 7(h)(1)).

**A.     Background**

The Court deems the following facts conceded by the plaintiff. On the night of March 28, 2008, the officers were dispatched to investigate a complaint of indecent exposure near 4046 E Street, S.E., Washington, D.C. Defs.' Facts ¶ 1. Specifically, the dispatcher reported that a black man and white woman were seen "engaging in sexual activity in a white, four-door sedan at that location." Id. ¶ 2. When the officers arrived at the scene—a parking lot behind an

apartment building—they found a car fitting the dispatcher's description with a black male in the driver's seat and a white female in the passenger seat. Id. ¶¶ 3-4. The male was later identified as the plaintiff. Id. ¶ 5. As the officers drew closer to the car, they saw that the female's head was in the man's lap, and "that [the p]laintiff's pants were down around his thighs." Id. ¶¶ 4, 6. Seeing this, the officers "asked the occupants to get out of the vehicle and place their hands on the trunk so the officers could check them for weapons." Id. ¶ 8. The plaintiff, however, "refused to follow the officers' instructions and actively resisted their attempts to do a pat down." Id. ¶ 9. The officers ultimately restrained the plaintiff and forced him to the ground. Id. ¶ 10. During his deposition in this case, the plaintiff testified that "after placing him in handcuffs, the police officers kicked and punched him for approximately five minutes." Id. ¶ 13.

The "[p]laintiff was charged with assault on a police officer and threats to do bodily harm," but those charges "were dismissed for want of prosecution" on August 5, 2008. Id. ¶¶ 14-15. According to the plaintiff's deposition testimony, the court dismissed the charges against him because the officers did not appear for scheduled court dates. Id. ¶ 16.

The plaintiff then instituted this action on December 12, 2008. His complaint asserts the following seven counts only against the officers: Count I – False Imprisonment, Compl. ¶¶ 17-19; Count II – Defamation Per Se, id. ¶¶ 20-23; Count III – Assault and Battery, id. ¶¶ 24-26; Count IV – Intentional Infliction of Emotional Distress, id. ¶¶ 27-29; Count V – Malicious Prosecution, id. ¶¶ 30-35; Count VI – False Arrest, id. ¶¶ 36-39; and Count VII – False Light Invasion of Privacy,[3] id. ¶¶ 40-45. Additionally, Count VIII of the complaint asserts a claim for various constitutional violations against all of the defendants pursuant to 42 U.S.C. § 1983. Id.

---

[3] The complaint mistakenly labels two counts as "Count VI." See Compl. at 10-11. The Court has corrected the error by renumbering the complaint's counts in this Memorandum Opinion.

6

¶¶ 46-54.  And Count IX seeks to hold the District vicariously liable for the officers' alleged conduct.  Id. ¶¶ 55-58.

The defendants have now moved for partial summary judgment.  Specifically, the District seeks summary judgment on all claims except the plaintiff's claims for common law assault and battery and intentional infliction of emotional distress.  Defs.' Mem. at 3.  The officers move for summary judgment on all claims except the plaintiff's constitutional claim for assault and battery under the Fourth Amendment, and his common law claims for assault and battery and intentional infliction of emotional distress.  Id.

**B.     Standard of Review**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," based upon the depositions, affidavits, and other factual materials in the record.  Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  And "a dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson, 477 U.S. at 248).  The moving party bears the initial burden of showing the absence of a disputed material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248 (citation and quotation marks omitted).  "Although summary judgment is not the occasion for the court to weigh credibility or evidence, summary judgment is appropriate 'if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.'" Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (citations omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party." Anderson, 477 U.S. at 249 (citation omitted). In making this assessment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." Talavera, 638 F.3d at 308 (citing Anderson, 477 U.S. at 255).

**C.     Analysis**

    **1.     The Plaintiff's § 1983 Claims**

Section 1983 allows plaintiffs to seek money damages for violations of constitutional rights by the District and its officials. See 42 U.S.C. § 1983. Count VIII of the plaintiff's complaint asserts claims against the defendants under § 1983 for violations of his rights under the Fourteenth, Fifth, and Fourth Amendments to the United States Constitution. Compl. ¶¶ 46-54. The defendants move for partial summary judgment as to certain aspects of these claims, which the Court will address in turn.[4]

        **i.     The Plaintiff's § 1983 Claims Against the District**

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), "municipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom. Respondeat superior does not apply." Warren v. Dist. of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing Monell, 436 U.S. at 694). "In order to state a claim against a

---

[4] The Court notes that the plaintiff's untimely opposition brief expressly concedes many of the defendants' arguments in favor of partial summary judgment. See, e.g., Pl.'s Opp'n at 2 (conceding that his Fourteenth and Fifth Amendment claims fail as a matter of law). Nevertheless, because the Court has stricken the plaintiff's filing from the docket, and because the Court must independently evaluate whether the defendants have met their initial burden in moving for summary judgment, it will address the merits of the defendants' arguments.

municipality, the plaintiff therefore must allege not only a violation of his rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation." Id.

As the defendants point out, there is no evidence in the record concerning any custom or policy of the District that caused the alleged violations of the plaintiff's constitutional rights. See Defs.' Mem. at 7. Absent such evidence, the plaintiff's § 1983 claims against the District fail. The Court therefore will grant summary judgment as to these claims in the District's favor.

### ii. The Plaintiff's § 1983 Claims Against the Officers

Two of the plaintiff's § 1983 claims against the officers warrant little discussion. First, as the defendants correctly assert, Defs.' Mem. at 5, the plaintiff's Fourteenth Amendment claim fails as a matter of law because that amendment does not apply to the District or its employees. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954); Scales v. Dist. of Columbia, 973 A.2d 722, 725 n.1 (D.C. 2009). Similarly unavailing is the plaintiff's claim that the officers seized him using excessive force in violation of the substantive component of the Fifth Amendment's Due Process Clause. This claim fails because claims of excessive force arising out of an arrest are generally covered by the Fourth Amendment, see Graham v. Connor, 490 U.S. 386, 388 (1989); Johnson v. Dist. of Columbia, 528 F.3d 969, 973 (D.C. Cir. 2008), and where, as here, "'a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process,'" County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (citation omitted). Summary judgment therefore will be granted in the officers' favor as to both of these claims.

The plaintiff's Fourth Amendment claim requires closer scrutiny. The officers contend that they are entitled to qualified immunity insofar as this claim challenges the plaintiff's initial encounter with the officers and his subsequent arrest. See Defs.' Mem. at 7-10. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation omitted). This inquiry entails two discrete questions (which need not be addressed in any particular order): whether the plaintiff has made out "a violation of a constitutional right," and, if so, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232 (citations omitted).

The plaintiff's claim fails under the first prong of the qualified immunity test—violation of a constitutional right. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by law enforcement officials, and this protection extends to a brief investigatory stop of persons or vehicles, whether or not an arrest follows." United States v. Bailey, 622 F.3d 1, 5 (D.C. Cir. 2010) (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). But "not all interactions between police and citizens are stops, as 'law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place.'" United States v. Goddard, 491 F.3d 457, 460 (D.C. Cir. 2007) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). Here, with respect to the initial encounter between the officers and the plaintiff, the plaintiff's car was already stopped and the officers merely approached it to investigate a complaint of indecent exposure. "[E]ven without reasonable suspicion, [the officers] had a right to approach the parked vehicle and talk to its occupants if that interview was purely consensual." United States v. Espinoza, 490 F.3d 41, 48 (1st Cir.

2007); see also United States v. Barry, 394 F.3d 1070, 1075 (8th Cir. 2005) (holding that no Fourth Amendment seizure occurred where officer merely approached a parked vehicle without any show of force and questioned the occupants); Goddard, 491 F.3d at 461 ("Our cases . . . allow police officers to make a contact—to approach individuals and interact with them—without reasonable suspicion."). And when the officers approached the car, they saw a woman with her head in the plaintiff's lap and the "plaintiff's pants were down around his thighs." Defs.' Facts ¶¶ 4, 6. Having observed firsthand the plaintiff engaging in what appeared to be illegal behavior (indecent exposure), the officers had a lawful basis to order him to exit the car. See United States v. Bullock, 510 F.3d 342, 345 (D.C. Cir. 2007) (Consistent with the Fourth Amendment, "'a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle.'" (quoting Maryland v. Wilson, 519 U.S. 408, 410 (1997)).

Based on the plaintiff's conduct after he exited the car, the officers were also justified in arresting the plaintiff. "It is well settled that an arrest without probable cause violates the fourth amendment." Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)). "Probable cause to make an arrest requires a showing that the police had 'enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it.'" Barham v. Ramsey, 434 F.3d 565, 572 (D.C. Cir. 2006) (citation omitted). Here, the undisputed facts reveal that the plaintiff "refused to follow the officers' instructions and actively resisted their attempts to do a pat down." Defs.' Facts ¶ 9. This behavior provided the officers with probable cause to arrest the plaintiff. See D.C. Code § 22-405(b) (making it unlawful for a person to, among other things, "resist[], oppose[], impede[]" or "interfere[] with a law enforcement officer" engaged in official duties); see also Cromartie, 479 F. App'x at 357 (holding that officers had probable cause to

arrest suspect under D.C. Code § 22-405(b) who was "belligerent, refused to obey instructions, and loudly cursed at the officers").

Accordingly, the officers are entitled to qualified immunity as to the plaintiff's Fourth Amendment challenges to his initial encounter with the officers and his subsequent arrest.[5]

### 2. The Plaintiff's Common Law Claims

#### i. The Plaintiff's Claims for False Arrest, False Imprisonment, Malicious Prosecution, and False Light Invasion of Privacy

Because the Court has concluded that the officers had probable cause to arrest the plaintiff, his common law claims for false arrest, false imprisonment, malicious prosecution, and false light invasion of privacy—all of which are premised on his arrest by the officers—fail as a matter of law. See Gabrou v. May Dep't Stores Co., 462 A.2d 1102, 1104 (D.C. 1983) ("Probable cause for an arrest and detention constitutes a valid defense to a claim of false arrest or imprisonment" and "will likewise defeat a claim for malicious prosecution and a claim for tortious invasion of privacy." (citations omitted)). Summary judgment on these claims is therefore granted in the defendants' favor.

#### ii. The Plaintiff's Defamation Claim

The plaintiff asserts that the officers defamed him by falsely stating in his arrest report that he engaged in lewd acts and other criminal behavior. See Compl. ¶¶ 20-23; Defs.' Facts ¶ 18. To prevail on a defamation claim under District of Columbia law, a plaintiff must

> prove four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without

---

[5] The Court notes that the primary basis for the plaintiff's Fourth Amendment claim is his assertion that the officers used excessive force in arresting him. See Rudder v. Williams, 666 F.3d 790, 795 (D.C. Cir. 2012) ("'A police officer's use of force is excessive and therefore violates the Fourth Amendment if it is not 'reasonable,' that is, if 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' is weightier than 'the countervailing governmental interests at stake.'" (quoting Graham, 490 U.S. at 396)). The defendants have not moved for summary judgment as to this aspect of the plaintiff's Fourth Amendment claim, so it will not be addressed by the Court.

privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

Oparaugo v. Watts, 884 A.2d 63, 76 (D.C. 2005) (quotation marks and citation omitted).

The plaintiff's defamation claim fails for several reasons. First, there is no record evidence that the officers' statements were false—i.e., that the plaintiff did <u>not</u> engage in the conduct described in the police report. Second, as the defendants correctly assert, Defs.' Mem. at 11-13, even if the statements were false, they are shielded by the common interest privilege. "A statement is protected by the common interest privilege if it is '(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty (3) to a person who has such a corresponding interest or duty.'" Payne v. Clark, 25 A.3d 918, 925 (D.C. 2011) (citation omitted). The undisputed facts are that the officers made the alleged defamatory statements in good faith and pursuant to their official duties as police officers employed by the District of Columbia government. <u>See</u> Defs.' Facts ¶¶ 4, 6. The alleged statements are therefore qualifiedly privileged. <u>See</u> Jackson v. Dist. of Columbia, 541 F. Supp. 2d 334, 344-45 (D.D.C. 2008) (police officer's good faith statements made pursuant to official duties deemed protected by the common interest privilege); <u>cf.</u> Smith v. Dist. of Columbia, 399 A.2d 213, 221 (D.C. 1979) (security guard's statements to police officer regarding suspected criminal wrongdoing made in the course of his duties deemed qualifiedly privileged). Accordingly, the Court will grant the defendants summary judgment on the plaintiff's defamation claim.

### 3. Recovery of Punitive Damages from the District

The plaintiff seeks to recover punitive damages from the District. See Compl. at 16. The District contends that such damages are not available as a matter of law in this case. Defs.' Mem. at 17. The Court agrees.

"[A]bsent 'extraordinary circumstances,' punitive damages are unavailable against the District of Columbia under District of Columbia law." Butera v. Dist. of Columbia, 235 F.3d 637, 658 (D.C. Cir. 2001) (citations omitted). "[E]xtraordinary circumstances" in this context include "circumstances such as 'where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused the plaintiff's injuries' or 'where a municipality or its policymakers have intentionally adopted the unconstitutional policy that caused the damages in question.'" Id. (citation omitted). No such circumstances are present here. In fact, the District of Columbia Court of Appeals has denied recovery of punitive damages in a case similar to this one, finding that it presented no "extraordinary circumstances." See Smith v. Dist. of Columbia, 336 A.2d 831, 832 (D.C. 1975) (per curiam) (holding that punitive damages were not available to a plaintiff who recovered a verdict against the District arising from a false arrest and assault). Thus, the Court will grant the District summary judgment as to the plaintiff's punitive damages claim.

### III. Conclusion

For the foregoing reasons, the Court (1) denies the plaintiff's motion to accept his late-filed opposition to the defendants' motion for partial summary judgment; (2) strikes the plaintiff's untimely opposition brief from the docket; (3) directs plaintiff's counsel, Anitha W. Johnson, as a sanction for her noncompliance with this Court's orders, to pay the Clerk of Court $500 and to reimburse the defendants for costs they reasonably incurred in responding to the

plaintiff's motion to accept his untimely opposition brief; (4) directs the Clerk to transmit a copy of the Notice attached as an appendix to this Memorandum Opinion to the plaintiff, Kevin Winkey, by whatever means necessary to ensure its receipt; and (5) grants the defendants' motion for partial summary judgment.

**SO ORDERED** this 30th day of May, 2013.[6]

REGGIE B. WALTON<br>United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN WINKEY, | ) |
|        Plaintiff, | ) |
| v. | ) Civil Action No. 08-2171 (RBW) |
| ANTHONY CAMPANALE, et al., | ) |
|        Defendants. | ) |

## NOTICE

Plaintiff Kevin Winkey is hereby provided the following notice:

You are advised that your attorney in this case, Anitha W. Johnson, has repeatedly failed to comply with orders of this Court. Some of these failures are documented in the Memorandum Opinion attached to this Notice. As a result of Ms. Johnson's actions, your case is in danger of dismissal by the Court. The Court will no longer tolerate Ms. Johnson's noncompliant course of conduct in the prosecution of your case. You are advised to contact Ms. Johnson to ensure future compliance with this Court's orders, or to make arrangements for the retention of new counsel.

**SO ORDERED** this 30th day of May, 2013

REGGIE B. WALTON
United States District Judge